UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AKHIL PATEL, et al.,

        Plaintiffs,

v.

DISH NETWORK L.L.C., et al.,

        Defendants.

Case No. 2:12-cv-1078
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Claims of Fraud. (ECF No. 19.) For the reasons that follow, the Court **DENIES** Defendants' motion.

### I.

The following facts are taken from the amended complaint.

Plaintiffs Akhil M. Patel and Premal M. Patel are brothers who shared a residence in Dublin, Ohio. Akhil was a subscriber of services provided by Defendant Dish Network L.L.C. ("Old Account"). In August 2010, Premal received a telephone call from a Dish Network agent, who indicated that the Old Account qualified for an upgrade. The agent offered a total of six receivers and the programming at a lower cost. The new cost was quoted at $97[1] per month. Plaintiffs accepted the upgrade offer.

The agent requested, and Premal provided, a credit card number so that Dish Network could charge to it a one-time $10 service charge. During this same conversation, the Dish Network agent suggested that the name on the Old Account should be changed from Akhil to Premal because Premal was providing the credit card number. Premal approved such a change.

---

[1] The amended complaint indicates in paragraph seven that the amount quoted was $99; however, throughout the remaining pleadings and briefings, the parties refer to the amount as $97. (Am. Compl. ¶ 7; ECF No. 15.)

The agent stated that he would cancel the Old Account without termination charges and confirmed that he set up a "New Account" that had a different account number.

After installation was complete, the Dish Network agent telephoned Premal to provide the set-up programming. During that conversation, Premal again requested that the Old Account be canceled and the agent indicated that it would be canceled as soon as the programming was complete.

In October or November 2010, Premal discovered that Defendants were deducting fees for both the Old Account and the New Account. The Old Account charges were being deducted from a bank account at Fifth Third Bank and the New Account charges were being deducted from Premal's credit card that he had provided to Dish Network for the one-time $10 charge that was needed to establish the New Account.

Premal repeatedly contacted Dish Network to resolve the issue and, Plaintiffs aver, Dish Network refused to resolve the problem. "After an incredible number of calls and frustration, Premal and Akhil closed the joint Fifth Third Bank account solely to keep Dish from deducting funds. Totally, Dish deducted $1,006.89 [for] the Old Account that Dish had no right to Deduct." (Am. Compl. ¶ 14.) At the same time, Dish Network was deducting from Premal's credit card approximately $161 per month for the New Account, even though he had been quoted a price of $97 per month.

Defendants began sending collection notices to Plaintiffs for the amounts they claim were due from the Old Account and it also requested over $500 in termination fees for that account. Akhil made numerous calls to Dish Network attempting to explain that the Old Account had been canceled by a Dish Network agent when the New Account was opened. Dish Network refused to withdraw or reverse any of the charges.

In May or June 2011, Plaintiffs began to receive collection notices and telephone calls from debt collectors hired by Defendants. Akhil attempted to explain the situation to the debt collectors on numerous occasions.

On December 16, 2011, Akhil received a check from Dish Network for $840 for some of the duplicative billing charges. Akhil continued to receive telephone calls from the bill collectors for the next few months. Defendants or their affiliates reported Akhil's alleged non-payment of valid charges to credit reporting agencies, which negatively impacted Akhil's credit score. Akhil was unable to refinance his house or to purchase two automobiles based on the adverse report Defendants made to the credit reporting agencies.

On October 19, 2012, Plaintiffs brought this action in the Franklin County Court of Common Pleas. On November 21, 2012, Defendants removed the case to this Court. In the amended complaint, Plaintiffs brings claims of fraud (Count I), unjust enrichment (Count II), unfair or deceptive acts or practices under Ohio Revised Code § 1345.09 and common law fraud (Count III), and deceptive trade practices (Count IV).

In Defendants' Motion to Dismiss Plaintiffs' Claims of Fraud, Defendants assert that Plaintiffs failed to state a fraud claim upon which this Court may grant relief by failing to plead with specificity and particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. That motion is ripe for review. (ECF Nos. 23, 24.)

II.

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of Plaintiffs, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556

U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 9(b) requires that "the circumstances of fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A heightened standard of pleading is therefore required when a plaintiff brings a claim for fraud, under which the circumstances constituting fraud must be stated with particularity. *See Shapiro v. Merrill Lynch & Co.*, 634 F. Supp. 587, 593 (S.D. Ohio 1986). The Sixth Circuit has explained that "[s]o long as a [party] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

### III.

To state a claim for fraud under Ohio law, a plaintiff must allege

> "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*Jennings v. Bodrick*, 2:09-CV-208, 2009 WL 1607711, at *2 (S.D. Ohio June 9, 2009) (quoting *Groob v. KeyBank*, 108 Ohio St. 3d 348, 357 (2006)).

Defendants argue that Plaintiffs have failed to "allege the necessary elements for a claim involving fraud."

4

> Specifically, the nature of Plaintiffs' fraud based claims (i.e. Counts I & III) is that Dish Network provided "wrongful" information to credit reporting agencies. (See Plaintiffs' Complaint at Counts I & III). Under Ohio law, there is no cognizable claim for fraud based on allegedly providing wrongful information to a third party.
> . . . .
> Thus, because Plaintiffs' allegations in Count I (Fraud) and Count III (Unfair or Deceptive Acts or Practices under O.R.C. Section 1345.09 and Common-Law Fraud) only allege that the statements were made to third parties and that those third parties (i.e. the credit reporting agencies) relied on such statements, Plaintiffs have not, and cannot, properly frame a claim involving fraud.

(Defs.' Mot. at 3) (citing *Joseph Corbett v. Beneficial Ohio, Inc.*, 847 F. Supp. 2d 1019 (S.D. Ohio 2012) (explaining that "to succeed on a claim of fraud, the statements at issue must be directed toward the alleged victim[,]" and that the reliance must be by the victim as well). Defendants further maintain that "Plaintiffs have no specific allegation that [Defendants] made any material representations that were false (or made with utter disregard), with any intent to mislead Plaintiffs, upon which Plaintiffs justifiably relied and were damaged." (Defs.' Reply at 2.) Defendant's arguments are not well taken.

Plaintiffs allege that a Dish Network representative stated that he would cancel the Old Account without a termination fee and that he set up a New Account. Defendant's representative confirmed that Plaintiffs would only be charged for one account. Plaintiffs relied upon these promises, provided credit card account information so that a one-time charge could be deducted, and agreed to the upgrade. However, Plaintiffs maintain that none of these promises occurred. That is, Plaintiffs assert that their Old Account was not canceled, they were charged for both accounts each month, they were charged a $500 cancellation fee, the amount Defendant deducted for the New Account was $160.83 per month, even though they had been quoted a price of $97 per month, and that the credit card that they provided for the one-time $10 charge was being debited for the New Account. Despite Plaintiffs' efforts, Defendants refused to withdraw or

5

reverse any of the charges, hired debt collectors who sent notices and made numerous telephone calls to Plaintiffs, and ultimately reported Plaintiffs to the credit reporting agencies causing Plaintiffs credit score to be lowered. Plaintiffs' reliance upon Defendants' promises to them redounded to their detriment when Defendants withdrew more than Plaintiffs agreed to pay, withdrew the amount from a credit card that was not provided for monthly payment withdrawals, and suffered the consequences of a lower credit score.

These allegations provide "sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading." *Ford Motor Co.*, 532 F.3d at 504. That is, that Defendants purposely provided Plaintiffs with false information about the services they were purchasing so that they could extract from Plaintiffs, at the threat of collection and credit score damage, more money than Plaintiffs agreed to spend. Moreover, Plaintiffs' allegations of fraudulent misrepresentation were "'made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made," thereby further putting Defendants "on 'sufficient notice of the misrepresentation . . . .'" *Coffey*, 2 F.3d at 162 (citation omitted).

### IV.

For the reasons set forth above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' Claims of Fraud. (ECF No. 19.)

**IT IS SO ORDERED.**

8-22-2014
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

6