UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AKHIL PATEL, et al.,**

    **Plaintiffs,**

v.

**DISH NETWORK L.L.C., et al.,**

    **Defendants.**

Case No. 2:12-cv-1078
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment as to all of Plaintiffs' Claims. (ECF No. 36). For the reasons that follow, the Court **DENIES** Defendants' Motion for Summary Judgment in part, and **GRANTS** Defendants' Motion for Summary Judgment in part. The case is scheduled for a settlement conference on **September 15, 2015**, and for trial on **October 26, 2015**.

**I.**

The facts of this case have been set forth in detail in this Court's Opinion and Order denying Defendants' Motion to Dismiss Plaintiffs' Claims of Fraud, (ECF No. 33), as follows:

> Plaintiffs Akhil M. Patel and Premal M. Patel are brothers who shared a residence in Dublin, Ohio. Akhil was a subscriber of services provided by Defendant Dish Network L.L.C. ("Old Account"). In August 2010, Premal received a telephone call from a Dish Network agent, who indicated that the Old Account qualified for an upgrade. The agent offered a better programming package at a lower cost. The new cost was quoted at about $97[1] per month. Plaintiffs accepted the upgrade offer.

---

[1] The amended complaint indicates in paragraph seven that the amount quoted was $99; however, throughout the remaining pleadings and briefings, the parties refer to the amount as $97. (Am. Compl. ¶ 7; ECF No. 15.) Mr. Premal Patel testified at deposition that he was expecting to pay "$97 plus taxes" – "maybe somewhere around $100" or "more like $118." (ECF No. 36-2, PageID # 346, at page 64:14 – 18).

The agent requested, and Premal provided, a credit card number so that Dish Network could charge to it a one-time $10 service charge. During this same conversation, the Dish Network agent suggested that the name on the Old Account should be changed from Akhil to Premal because Premal was providing the credit card number. Premal approved such a change. The agent stated that he would cancel the Old Account without termination charges and confirmed that he set up a "New Account" that had a different account number. After installation was complete, the Dish Network agent telephoned Premal to provide the set-up programming. During that conversation, Premal again requested that the Old Account be canceled and the agent indicated that it would be canceled as soon as the programming was complete.

In October or November 2010, Premal discovered that Defendants were deducting fees for both the Old Account and the New Account. The Old Account charges were being deducted from a bank account at Fifth Third Bank and the New Account charges were being deducted from Premal's credit card that he had provided to Dish Network for the one-time $10 charge that was needed to establish the New Account.

Premal repeatedly contacted Dish Network to resolve the issue and, Plaintiffs aver, Dish Network refused to resolve the problem. "After an incredible number of calls and frustration, Premal and Akhil closed the joint Fifth Third Bank account solely to keep Dish from deducting funds. Totally, Dish deducted $1,006.89 [for] the Old Account that Dish had no right to Deduct." (Am. Compl. ¶ 14.) At the same time, Dish Network was deducting from Premal's credit card approximately $161 per month for the New Account, even though he had been quoted a price of $97 per month.

Defendants began sending collection notices to Plaintiffs for the amounts they claim were due from the Old Account and it also requested over $500 in termination fees for that account. Akhil made numerous calls to Dish Network attempting to explain that the Old Account had been canceled by a Dish Network agent when the New Account was opened. Dish Network refused to withdraw or reverse any of the charges.

In May or June 2011, Plaintiffs began to receive collection notices and telephone calls from debt collectors hired by Defendants. Akhil attempted to explain the situation to the debt collectors on numerous occasions.

On December 16, 2011, Akhil received a check from Dish Network for $840 for some of the duplicative billing charges. Akhil continued to receive telephone calls from the bill collectors for the next few months. Defendants or their affiliates reported Akhil's alleged non-payment of valid charges to credit reporting agencies, which negatively impacted Akhil's credit score. Akhil was unable to refinance his house or to purchase two automobiles based on the adverse report Defendants made to the credit reporting agencies.

On October 19, 2012, Plaintiffs brought this action in the Franklin County Court of Common Pleas. On November 21, 2012, Defendants removed the case to this Court. In the amended complaint, Plaintiffs brought claims of fraud (Count I), unjust enrichment (Count II), unfair or deceptive acts or practices under Ohio Revised Code § 1345.09 and common law fraud (Count III), and deceptive trade practices (Count IV). (ECF No. 15).

## II.

Summary judgment is appropriate if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). "While the court should not weigh the evidence as a jury would, it must analyze the evidence enough to determine whether there is an issue that 'may reasonably be resolved in favor of either party.'" *Liberty Lobby*, 477 U.S. at 250. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

## III.

**A. Claim I (Fraud) and Claim III (Ohio Consumer Sales Practices Act)**

Plaintiffs allege that Defendants made fraudulent representations to them, fraudulently

3

double-billed them for services, and then falsely reported them to credit agencies, causing a lowered credit rating. The same evidence is offered in support of Plaintiffs' fraud claim, and their claim under the Ohio Consumer Sales Practices Act. A claim for fraud under Ohio law requires

> "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*Jennings v. Bodrick*, 2:09-CV-208, 2009 WL 1607711, at *2 (S.D. Ohio June 9, 2009) (quoting *Groob v. KeyBank*, 108 Ohio St. 3d 348, 357 (2006)).

Plaintiffs also allege that the Defendants' conduct violated the Ohio Consumer Sales Practices Act, ("CSPA"),O.R.C. 1345.09. The CSPA

> "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03. In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.* 106 Ohio St.3d 278, 2005 – Ohio - 4985, 834 N.E. 2d 791, ¶ 24.

*Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 180, 855 N.E.2d 825 (Ohio 2008). The CSPA is a "remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to O.R.C. 1.11." *Id.*, at 180, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (Ohio 1990). "[I]n an action brought under the CSPA, all forms of compensatory relief, including noneconomic damages, are included

4

within the term 'damages' in R.C. 1345.09(A). The actual damages proven, whether economic or noneconomic, are subject to trebling under R.C. 1345.09(B)." *Whitaker*, at 185.[2]

Defendants have provided excerpts of Plaintiffs' depositions in support of their Motion for Summary Judgment. (ECF No. 36-1, 36-2). Affidavits from both Mr. Akhil Patel and Mr. Premal Patel have been provided in support of Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment. (ECF Nos. 39, 39-1, 39-2). In their Reply to Plaintiffs' Memorandum Contra to Defendants' Motion for Summary Judgment, Defendants ask this Court to strike paragraphs 5 and 14 from Mr. Premal Patel's affidavit, alleging that those paragraphs are "an attempt to change his testimony." (ECF No. 40, PageID #377). Parties may not create a factual issue by filing affidavits, after a motion for summary judgment has been made, contradicting earlier deposition testimony. *Reid v. Sear, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). However, "the district court should not refuse to consider a statement contained in an affidavit that is not directly contradicted by prior deposition testimony." *Veltri v. DFS Servs. LLC*, No. 2:09-cv-416, 2011 U.S. Dist. LEXIS 93625, at *11 – 12 (S.D. Ohio Aug. 22, 2011) (citing *Briggs v. Potter*, 463 F.3d 507, 513-14 (6th Cir. 2006)). The Court declines to strike these paragraphs. Mr. Patel testified at deposition that he expected to pay a new lower base amount "plus taxes." Whether the new lower amount quoted was exactly $97, $99, or some other number, it is clear that the amount the Plaintiffs expected to pay was lower than the amount they were charged, and this is certainly so considering that they were being double-charged for a period of time. Defendants tacitly concede that eventually they forwarded a check for "approximately $863" to Mr. Akhil Patel "for the cost of payments made on his account during the time frame when both his and Premal's accounts were being charged for services at the

---

[2] An award for punitive damages is possible under the CSPA for a violation committed with actual malice. Punitive damages would not be subject to trebling. *Whitaker*, at 183.

5

Parkmeadow address." (ECF No. 36, PageID # 305). However, this does not resolve the issue of the lower amount the Plaintiffs thought they were to be charged each month for the New Account.

In their affidavits, Plaintiffs testify that a Dish Network representative stated that he would cancel the Old Account without a termination fee and that he would set up a New Account. Defendants' representative confirmed that Plaintiffs would only be charged for one account. Plaintiffs relied upon these promises, provided credit card account information so that a one-time charge could be deducted, and agreed to the upgrade. However, Plaintiffs maintain that none of these promises occurred. That is, Plaintiffs assert that their Old Account was not canceled, they were charged for both accounts each month, Defendants demanded a $500 cancellation fee, the amount Defendant deducted for the New Account was $160.83 per month, even though they had been quoted a price of $97 per month, and that the credit card that they provided for the one-time $10 charge was being debited for the New Account. Despite Plaintiffs' efforts, Defendants refused to withdraw or reverse any of the charges, hired debt collectors who sent notices and made numerous telephone calls to Plaintiffs, and ultimately reported Plaintiffs to the credit reporting agencies causing Mr. Akhil Patel's credit score to be lowered. Plaintiffs' reliance upon Defendants' promises to them redounded to their detriment when Defendants withdrew more than Plaintiffs agreed to pay, withdrew the amount from a credit card that was not provided for monthly payment withdrawals, and suffered the consequences of a lower credit score.

An analysis of the evidence produced by the parties, weighed in the light most favorable to the Plaintiffs, establishes that genuine issues of material fact remain. Accordingly, Defendants' Motion for Summary Judgment as to Claims I and III is **DENIED**.

### B. Claim II (Unjust Enrichment)

In Ohio, the elements of a claim for unjust enrichment are as follows: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. See *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E. 2d 1298 (1984).

> Unjust enrichment arises out of a contract implied in law. *Hummel v. Hummel,* 133 Ohio St. 520, 14 N.E. 2d 923, 925-26 (1938). A 'contract implied in law' is not a true contract, but is a 'quasi-contract' implied by a court when a party 'retains money or benefits which in justice and equity belong to another.' *Id.* at 926-27. Ohio law does not allow parties to 'seek damages under quasi-contractual theories of recovery' such as a claim of unjust enrichment when a contract governs the relationship. *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.,* 796 F.Supp. 1078, 1085 (S.D. Ohio 1992)). Recovery under an unjust enrichment theory is precluded because the terms of the agreement define the parties' relationship. *Wolfer Ent., Inc. v. Overbrook Dev. Corp.*, 132 Ohio App. 3d 353, 724 N.E.2d 1251, 1253 (1999). A claim for unjust enrichment may be pled in the alternative, however, when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality. *Resource Title Agency, Inc. v Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004).

*Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012). Here, as in *Gascho*, Plaintiffs' unjust enrichment claim is conceptually broader than any contract theory because it is not contingent on the existence of a contract between the parties. Plaintiffs supply evidence of fraud, or at a minimum, bad faith, and the conduct alleged by Plaintiffs in their submissions is sufficient to raise genuine issues of material fact concerning the character of the business interactions with Defendants. Accordingly, the Defendants' Motion for Summary Judgment on the unjust enrichment claim is **DENIED**.

### C. Claim IV (Ohio Deceptive Trade Practices Act)

In their Amended Complaint, Plaintiffs assert that Defendants violated Ohio's Deceptive Trade Practices Act ("DTPA"), O.R.C. 4165.02. (ECF No. 15, PageID # 89). However, they do not brief this claim in their response to Defendants' Motion for Summary Judgment. (ECF No. 39). Defendants move for summary judgment on this claim as a matter of law, asserting that an individual consumer lacks standing to assert a claim under the DTPA. (ECF No. 40, PageID # 380). This Court agrees.

This Court has recently examined this issue in *Lester v. Wow Car Co., Ltd.*, No. 2:11-cv-850, 2014 WL 2567087, at *11-12 (S.D. Ohio, June 6, 2014). Although the Ohio Supreme Court has not opined on the issue, this Court "predicts that the Ohio Supreme Court would dismiss Ohio Plaintiffs' ODTPA claim for lack of standing." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 873 (S.D. Ohio 2012). The *In re Porsche* case explains that in interpreting the ODTPA, Ohio courts apply "the same analysis applicable to claims commenced under analogous federal law." *Chandler & Assoc. v. Am. Healthcare Alliance*, 125 Ohio App.3d 572, 580 (Ohio Ct. App. 1997) ("When adjudicating claims under the [ODTPA], Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law."). The analogous federal law is the Lanham Act, 15 U.S.C. § 15 U.S.C. § 1125 *et seq*. Federal courts have consistently held that individual consumers do not have standing to sue under the Lanham Act because they are not within the class of persons that the Act was designed to protect. *Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 280 (4th Cir. 2004) ("At least half of the circuits hold (and none of the others disagree) that the second of these Lanham Act provisions, § 45, or 15 U.S.C. § 1127, bars a consumer from suing under the Act.") (citing cases from the Second, Third, Fifth, Seventh, Ninth, and Tenth circuits). Moreover, "Section 45 of the Lanham

8

Act states that '[t]he intent of [the Act] is . . . to protect persons engaged in [congressionally regulated] commerce against unfair competition." *Id*. at 279–80 (citing 15 U.S.C. § 1127).

Since the issuance of *In re Porsche*, other cases from this Court have adopted its analysis. *See Smith v. Smith & Nephew, Inc.*, 1:13-cv-289, 2014 WL 934541 (S.D. Ohio Mar. 10, 2014) (holding that "this Court is persuaded by recent decisions of this Court which have held that consumers lack standing to bring a ODTPA claim"); *Gascho v. Global Fitness Holdings*, LLC, 863 F. Supp.2d 677, 699 (S.D. Ohio 2012) (noting that at least one Ohio appellate court has found that consumers lack standing under the ODTPA and judges in the Northern District of Ohio have consistently found that consumers lack standing under the ODTPA); *Allen v. Andersen Windows, Inc.*, 913 F.Supp.2d 490, 513 (S.D. Ohio 2012) ("see[ing] no reason to depart from its holding in *In re Porsche*" and dismissing consumer's ODTPA claim).

In line with these cases, this Court adopts the reasoning and holding from *In re Porsche* and concludes that Plaintiffs lack standing to assert a claim under the ODTPA. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** Plaintiffs' ODTPA claim.

### IV.

Finally, Defendants ask this Court to rule that punitive damages are not permitted for Plaintiffs' claims as a matter of law. The Court declines to so rule. As noted in footnote 2, *supra*, punitive damages are a part of the damages recoverable under the CSPA for violations where the Plaintiffs demonstrate "actual malice." In Ohio, "[p]unitive damages are recoverable from a defendant in a tort action where the actions of the defendant 'demonstrate malice or aggravated or egregious fraud.'" O.R.C. § 2315.21(E)(1). See also *Zappitelli v. Miller*, 114

9

Ohio St. 3d 102, 868 N.E.2d 968, 969 (Ohio 2007) (in an action to recover for a tort which involves the ingredients of fraud, a jury may award punitive damages).

> To award punitive damages, a court must find 'actual malice,' which is either 1) a 'state of mind . . . characterized by hatred, ill will or a spirit of revenge'; or 2) 'a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' *Preston v. Murty*, 32 Ohio St. 3d 334, 512 N.E.2d 1174 (1987); *McEnteer v. Moss*, 2005 WL 1283707, at *2 (9th Dist.).

*Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968, 977 (N.D. Ohio 2008). In their affidavits, Plaintiffs assert that they alerted Defendants to the alleged improper billing and double-billing. Defendants continued to double-bill Plaintiffs for approximately seven months, from August, 2010, through February 2011, until Plaintiffs closed their bank account to prevent the improper deductions for the Old Account. In May or June, 2011, after Plaintiffs had closed the bank account, Defendants' debt collectors called "sometimes on a daily basis." The collection calls and improper billing continued for months. Defendants continued to send collection notices, even after being informed that no money was owed for the duplicative charges. Ultimately, Defendants reported incorrect negative information to the credit reporting agencies, resulting in a lowered credit score for one plaintiff. Defendants "also requested more than $500.00 in termination charges." Finally, Plaintiffs sent a sample legal complaint to Defendants through the mail. Plaintiffs allege that after receiving the sample complaint in December, 2011, a representative from Defendants agreed to reimburse Plaintiffs for some of the overcharges (some 17 months after the improper billing began). (ECF No. 39-1, PageID # 367 - 368). Taken in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have raised genuine issues of material fact concerning the applicability of punitive damages. Accordingly, Defendants Motion for Summary Judgment as to punitive damages is **DENIED**.

## V.

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment (ECF No. 36). Accordingly, Plaintiffs' Deceptive Trade Practices Act claim (Claim IV) is **DISMISSED**.

**IT IS SO ORDERED.**

8-11-2015
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**